# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| SHEBA MAREE and JEFF SPIVA, Surviving Parents of CALEB MITCHELL, Deceased, | * * * * | |
| Plaintiffs, | * | |
| v. | * * | CIVIL ACTION NO. |
| SGT. WALLACE L. RICHARDSON, C.O. JAMES LEE ROY IGOU, and WARDEN DON BLAKELY, in their individual capacities, | * * * * * | |
| Defendants. | * | |

## COMPLAINT

COME NOW Plaintiffs Sheba Maree and Jeff Spiva and hereby file this Complaint for damages against Defendants as follows:

## INTRODUCTION

1.

This is a 42 U.S.C. §1983 federal civil rights action and arising from the death of Plaintiffs' adult son, who was an inmate at Valdosta State Prison, resulting from the deliberate indifference of the Defendant correctional officers in violation of the Eighth Amendment. Defendants also acted in concert with one another to violate Plaintiffs' right of access to the courts under the First and Fourteenth

Amendments by filing false reports and taking actions to cover up their misconduct after the fact.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343, and the aforementioned constitutional and statutory provisions.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because one or more of the parties are domiciled within the Middle District and Valdosta Division, and the events giving rise to this lawsuit occurred therein.

4.

All of the parties herein are subject to the jurisdiction of this Court.

## PARTIES

5.

Plaintiff Sheba Maree is a citizen of the state of North Carolina and the natural mother of Caleb Mitchell, who was an inmate at Valdosta State Prison

when he died on December 6, 2017.

6.

Plaintiff Jeff Spiva is a citizen of the state of Georgia and the natural father of Caleb Mitchell, who was an inmate at Valdosta State Prison when he died on December 6, 2017.

7.

Plaintiffs bring this claim for wrongful death in their capacity as natural parents of Caleb Mitchell, who was unmarred and had no children.  Plaintiffs intend to apply for appointment as administrator(s) of the estate of Caleb Mitchell so they can also bring a claim in their representative capacity on behalf of the estate for pain and suffering and punitive damages, at which time the Complaint will be amended accordingly.

8.

Defendant Wallace L. Richardson was, at all times relevant herein, an individual residing in the state of Georgia who was employed as a correctional officer by the Georgia Department of Corrections, and who may be served by notice of lawsuit and request for waiver of service via First Class Mail.

9.

Defendant James Lee Roy Igou was, at all times relevant herein, an

3

individual residing in the state of Georgia who was employed as a correctional officer by the Georgia Department of Corrections, and who may be served by notice of lawsuit and request for waiver of service via First Class Mail.

10.

Defendant Don Blakely was, at all times relevant herein, an individual residing in the state of Georgia who was employed as a prison warden by the Georgia Department of Corrections, and who may be served by notice of lawsuit and request for waiver of service via First Class Mail.

11.

The above-named Defendants are sued in their individual capacities for federal constitutional violations.

12.

At all times relevant herein, the above-named Defendants acted under color of state law.

**FACTS**

13.

On or about December 2, 2017, Plaintiff Maree received a letter from her son Caleb Mitchell, an inmate at Valdosta State Prison in Lowndes County, Georgia. In the letter, Caleb said that he was going to pull a "suicide stunt" at the

prison.

14.

Maree took the threat seriously because Caleb had a history of mental illness, was suffering from gender identity issues, and had engaged in a pattern of suicidal and self-harming behavior.

15.

On December 2, 2017, Maree telephoned Valdosta State Prison and told the woman who answered the phone about the suicidal threat in the letter and asked to speak with someone about putting Caleb on suicide watch. The woman responded that Caleb was already "in medical" for attempting to commit suicide and that he was "okay."

16.

The prison employee who took the call from Maree told one or more other staff members about it.

17.

One of the staff members who was made aware of the call was the warden, Don Blakely.

18.

Plaintiffs are unaware of Caleb's whereabouts or condition on December 2,

2017 because the Department of Corrections has refused to produce any records, claiming that they are state secrets which are exempt from the Open Records Act.

19.

However, it is known that he was in solitary confinement on December 4, 2017 and that he had been in solitary confinement off and on for nine months.

20.

Upon information and belief, Caleb was in solitary confinement from approximately November 19, 2017 until the time of the subject incident on December 4, 2017.

21.

When he was placed in solitary confinement, Caleb was told by prison staff that he was being moved to the compound for transgender inmates. At that time, Caleb had been medically approved for sexual reassignment surgery.

22.

On December 4, 2017, Caleb was in an isolation cell when he told a correctional officer, Defendant Igou, that he was about to hang himself.

23.

Rather than waiting with Caleb to make sure that he did not hang himself, entering the cell to prevent Caleb from engaging in self-harming behavior, or

calling for assistance from the cell, Officer Igou left Caleb and went off to inform other staff members about the threat.

24.

While Igou was gone, and before he or other staff members returned to the cell, Caleb did in fact hang himself.

25.

Once Caleb was found hanging in the cell, there was an unreasonable delay in cutting him down because there was no cutting tool in the control room and officers had to go to the medical unit to get scissors.

26.

An ambulance was called and Caleb was transported to a hospital, where he remained in a coma for two days until life support was cut off on December 6, 2017, when he was pronounced dead.

27.

After the incident, Igou's supervisor – Defendant Richardson – prepared a false incident report to cover up Igou's conduct.  The report was intended to conceal the circumstances of Caleb's death in order to protect Igou and other staff members from  adverse action such as discipline, GBI investigation, or civil litigation.

28.

Warden Blakely reviewed and approved the incident report, even though he knew that it presented a false narrative of the facts, in order to avoid further scrutiny of the prison, which had recently experienced a number of inmate deaths and staff reassignments.

## COUNT TWO
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

29.

At all times relevant herein, Defendants knew that Caleb Mitchell was inflicted with a serious psychiatric condition, that he was suicidal, and that he had a history of suicide attempts and self-harming behavior, and they knew that he was exposed to a significant risk of serious harm.

30.

Defendants owed a duty to protect Caleb from a known risk of serious harm while in their custody, but they failed to perform that duty.

31.

Defendants' failure to take reasonable action to protect Caleb Mitchell from a known risk of serious harm amounted to deliberate indifference to serious medical needs, including psychiatric needs, in violation of the Eighth Fourteenth Amendment.

32.

The law was clearly established in 2017 that a jail officer or supervisor cannot act or fail to act with deliberate indifference to a foreseeable risk of significant harm, including but not limited to suicide, and Defendants are not entitled to qualified immunity for their reckless and indifferent acts and omissions in the face of actual knowledge of suicidal intentions or self-harming behavior that foreseeably led to Caleb's death.

33.

Said deliberate indifference proximately caused the death of Caleb Mitchell and the violation of his rights.

## COUNT TWO
## DENIAL OF ACCESS TO COURTS

34.

The aforementioned cover-up and falsification of records by Defendants in order to conceal wrongdoing and avoid scrutiny of their actions constitutes a deliberate attempt to deny Plaintiffs their right to petition for grievances and right of access to the courts under the First and Fourteenth Amendments.

35.

An aggrieved citizen's right of access to the courts to seek redress under the First and Fourteenth Amendments of the United States Constitution trumps the

power of government to withhold information that the citizen needs to assert a claim against government officials. *See, e.g., Christopher v. Harbury*, 536 U.S. 403 (2002); *Lewis v. Casey*, 518 U.S. 343 (1996).

36.

Defendants are not entitled to qualified immunity on their right of access claim because it was clearly established law in 2017 that public officials cannot conceal their misconduct by falsifying records or participating in a cover-up of official wrongdoing to avoid public scrutiny, investigation, or legal action.

37.

Defendants are liable for violating Plaintiffs' right of access to the legal system under the First and Fourteenth Amendments.

**DAMAGES**

38.

As a direct and proximate result of the aforementioned unconstitutional and unlawful misconduct of the aforementioned Defendants, Plaintiffs' decedent died a premature death at the age of 25 and experienced conscious physical and mental pain and suffering during the time leading up to his death, and his estate incurred funeral and other necessary expenses, for which Plaintiffs is entitled to recover the full value of the life of the decedent as well as compensatory damages for the

aforesaid losses and injuries in an amount to be proven at trial and determined by a fair and impartial jury.

39.

The aforementioned conduct of Defendants rose to such a level of bad faith, willfulness, and reckless disregard for the consequences as to authorize the imposition of punitive damages against Defendants.

40.

Plaintiffs are entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. §1988.

WHEREFORE Plaintiffs demand as follows:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiffs and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiffs be awarded attorney's fees and reasonable expenses of litigation;

d) That all costs of this action be taxed against Defendants; and

e) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 20th day of March, 2019.

*/s/ Craig T. Jones*
CRAIG T. JONES
Ga. Bar No. 399476
Attorney for Plaintiffs

CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
(706) 678-2364
craigthomasjones@outlook.com