**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| SHEBA MAREE, surviving parent of Deceased Caleb Mitchell, *et al.*, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.:  7:19-CV-00046 (WLS) |
| | : | |
| Corrections Officer JAMES LEE ROY IGOU, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

The Parties in this case have filed various motions that are before the Court: Defendant Igou's Motion to Dismiss the initial Complaint and Motion to Dismiss the Amended Complaint (Docs. 11 & 23), Defendant Blakely's Motion to Dismiss the Amended Complaint and Motion to Dismiss the Second Amended Complaint (Docs. 22 & 40), and Plaintiffs' Motion to File a Second Amended Complaint (Doc. 39). All of these motions are ripe for the Court's review. (*See* docket.)

### I.   Procedural Background

Plaintiffs Sheba Maree and Jeff Spiva brought this action on March 20, 2019 on behalf of their son Caleb Mitchell, who was an inmate at Valdosta State Prison ("VSP"). (Docs. 1 & 19 ¶¶ 5-6.) In their Amended Complaint, Plaintiffs brought a claim in Count 1 against all Defendants for deliberate indifference to serious medical needs, alleging that Defendants were deliberately indifferent to a foreseeable risk of significant harm, including suicide, and to Mitchell's psychiatric needs. (Doc. 19 ¶¶ 31-36.) In Count 2, Plaintiffs brought a forward-looking claim for denial of access to the courts, alleging that Defendants have "continued to engage in a pattern of obstruction and cover-up intended to frustrate legal action by Plaintiffs, both pre-suit and post-suit" and request to bring this claim backward-looking if Defendants' motions to dismiss are successful. *Id.* ¶¶ 39-40.

1

After Defendants moved to dismiss Plaintiffs' initial Complaint (Doc. 1) and Amended Complaint (Doc. 19), the Court granted Defendant James Lee Roy Igou's Motions to Stay Discovery, and no discovery conference has been held to-date. (Doc. 27.) The Court also granted Plaintiffs' request for an oral argument on the motions to dismiss. (*See* docket.) Prior to oral arguments, on July 22, 2019, Plaintiffs obtained new counsel. (Doc. 31.) At the hearing for oral arguments, Plaintiffs' new counsel orally moved to dismiss without prejudice Plaintiff's denial of access to the courts claim and to dismiss without prejudice Defendant Richardson. (*See* Doc. 37.) The Court granted both motions. *Id.* Plaintiffs also asked to amend the Complaint, and the Court stated that Plaintiffs could file a motion to amend, attaching the proposed amended complaint, and that Defendants could respond thereto. *Id.*

On August 30, 2019, Plaintiffs filed a proposed Second Amended Complaint and thereafter filed a Motion to Amend with the proposed Second Amended Complaint. (Docs. 38 & 39.)[1] Defendant Blakely timely moved to dismiss the proposed Second Amended Complaint[2] and Defendant Igou timely responded to Plaintiffs' Motion to File a Second Amended Complaint. (Docs. 40 & 41.) Plaintiffs timely replied to both. (Doc. 43.)

## II.   Factual Background[3]

Plaintiffs allege that their child Jenna Mitchell[4] (born Caleb Mitchell) had a well-documented history of "mental illness, self-harm, and suicidal ideation and attempts" and that she had been diagnosed with bipolar disorder, schizophrenia, and gender dysphoria. (Doc. 39-1 ¶ 15.) Plaintiffs allege that Defendants were aware of these conditions and Mitchell's history of self-harm and that these conditions limited Mitchell's major life functions. *Id.* ¶¶ 16-17. On December 2, 2017, Mitchell's mother Maree called VSP and informed an employee that Mitchell had threatened suicide, and she asked that Mitchell be placed on suicide watch. *Id.* ¶ 18. Maree was informed that Mitchell had already attempted suicide but that Mitchell was

---

[1] The Court accepts Plaintiffs' explanation that they misunderstood the Court's directive to file a motion rather than an amended complaint (Doc. 39 at 1 n.1) and will treat the motion as if timely filed.

[2] Consistent with the Court's directives that Defendant could respond to Plaintiffs' motion to amend (Doc. 37), the Court construes Blakely's motion to dismiss (Doc. 40) as a response to Plaintiffs' Motion to File a Second Amended Complaint. The applicable legal standards remain the same.

[3] Because the Court will assess the sufficiency of Plaintiffs' proposed Second Amended Complaint under a motion to dismiss standard, these facts are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[4] Because the proposed Second Amended Complaint uses this name and feminine pronouns, the Court will do the same.

placed "in medical" and was "okay." *Id.* Plaintiffs allege that Defendant former Warden Don Blakely and other prison personnel were made aware of the call. *Id.* ¶ 19. Plaintiffs allege that Mitchell was nonetheless again placed in solitary confinement on December 4, 2017, rather than on suicide watch, and that Mitchell had been in solitary confinement off and on for nine months. *Id.* ¶¶ 20-21. Plaintiffs allege that Mitchell was frequently attacked by other inmates and/or corrections officers because VSP failed to keep her safe. *Id.* ¶ 22.

On December 4, 2017, Plaintiffs allege that Mitchell told correctional officer Igou that she was about to commit suicide by hanging. (Doc. 39-1 ¶ 23.) Plaintiffs allege that rather than helping Mitchell or removing the means of committing suicide, Igou "verbally taunted Jenna and encouraged her to commit suicide." *Id.* ¶¶ 24-25. Plaintiffs allege that as Igou walked away, at least one other inmate informed him that Mitchell was taking steps to commit suicide, and Igou allegedly "laughed, and shouted down the cell block that Jenna should wait until he returned . . . because he (Igou) 'wanted to see' that happen."' *Id.* ¶¶ 26-27. When Igou returned, accompanied by one or more other officers, Mitchell was found hanging in her cell. *Id.* ¶ 30. The officers took several more minutes to find a "cut down tool" to cut the ligatures and place Mitchell on the ground. *Id.* ¶¶ 31-32. Plaintiffs allege that it is the standard of care in prisons to have a cut down tool available, especially for prisoners at risk of suicide, and that had a cut down tool been available, Mitchell's life could have been saved. *Id.* ¶¶ 33-35. Mitchell was in a coma for two days and was pronounced dead on December 6, 2017. *Id.* ¶ 36.

Plaintiffs allege that Mitchell had severe injuries to her face when she died that were the result of physical violence. (Doc. 39-1 ¶ 37.) Plaintiffs allege that although VSP asserted the injuries were the result of Mitchell's body falling off of the gurney twice, her injuries were not consistent with falling. *Id.* Plaintiffs allege that despite knowing of Mitchell's high risk for suicide, Defendant Blakely and other Georgia Department of Corrections ("GDOC") staff housed Mitchell in a cell with an obvious "'tie off point' (a location where a ligature could be tied and used for hanging)," and that they did not house Mitchell in one of the available suicide watch housing assignments or provide the accommodation of housing her in a cell without a tie off point. *Id.* ¶ 30. Plaintiffs assert that Defendant Blakely and GDOC staff also housed Mitchell with sheets and other ligatures that could be used and were in fact used to commit suicide by hanging when they could have provided the reasonable accommodation of

3

removing those ligatures from her cell. *Id.* ¶ 43-44. Plaintiffs also allege that it is well known that solitary confinement leads to self-harm, including suicide, especially among inmates with serious mental illness and that Mitchell was denied the reasonable accommodation of being placed in an appropriate unit. *Id.* ¶¶ 46-54. Plaintiffs allege that Georgia Correctional Health Care ("GCHC") makes mandatory recommendations to GDOC for housing inmates with disabilities, and that GCHC failed to recommend safe housing for Mitchell despite its knowledge of her mental illness. *Id.* ¶ 55. Plaintiffs also allege that neither GDOC nor GCHC took steps to house Mitchell with another person despite knowing that this could have prevented Mitchell from committing suicide. *Id.* ¶ 56.

Plaintiffs seek to bring a claim against GDOC and GCHC under the Americans with Disabilities Act and the Rehabilitation Act for their failure to reasonably accommodate Mitchell's mental disabilities, provide adequate medical and mental health care, and prevent Mitchell from death by suicide. (Doc. 39-1 ¶¶ 57-67.) Plaintiffs also seek to bring a claim against Defendants Blakely and Igou for deliberate indifference under the Eighth Amendment and 42 U.S.C. § 1983. *Id.* at 68-73. Plaintiffs seek compensatory and punitive damages and reasonable attorney's fees, costs, and disbursements. *Id.* at 11.

### III.    Discussion

#### A.  Legal Standard

A court's discretion to dismiss a complaint without leave to amend "is 'severely restrict[ed]'" and leave to amend should be freely given "when justice so requires." *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.1988) (citation omitted); Fed. R. Civ. P. 15(a)(2). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). In other words, where a party seeks leave to amend before the deadline to amend has elapsed (under the discovery order), the Court must identify a substantial reason to justify denying the motion. *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). Substantial reasons include undue delay, futility, bad faith, and dilatory motive, among others. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Leave to amend a complaint is futile when the complaint as amended would still be

4

properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Further, Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Secs. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). Furthermore, in section 1983 cases where a defense of qualified immunity is raised, the plaintiff must plead enough factual detail "from which the court may determine whether [d]efendants' alleged actions violated a clearly established constitutional right." *Amnesty Intern'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009) (citation omitted).

In his prior Motion to Dismiss, Igou asserted that (1) Plaintiffs failed to state a claim for deliberate indifference against him because they essentially allege no more than that he left Mitchell to try to get help and (2) that he is entitled to qualified immunity. (Doc. 23.) Blakely previously "raise[d]" qualified immunity as to Plaintiffs' remaining Section 1983 claims" and "join[ed] in the Motion to Dismiss of his Co-Defendants." (Doc. 22-1 at 6-7.) After Plaintiffs moved to file a Second Amended Complaint, Igou responded that leave to amend should be denied because Plaintiffs "have offered no legitimate reason as to why the additional facts and defendants were not added in the prior complaints" and that the time for Plaintiffs to amend their Complaint has passed. (Doc. 42 at 4-5.) Blakely moves to dismiss the Second Amended

Complaint asserting that Plaintiffs have failed to state a deliberate indifference claim against him as a supervisor and that he is entitled to qualified immunity. (Doc. 40-1.)

### B.  Deliberate Indifference Claims

To allege an Eighth Amendment deliberate indifference claim, Plaintiffs must allege that Defendants "had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence." *Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003). "[I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard 'a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005). Furthermore, "[i]n the context of jail suicides, an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies." *Popham v. Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990). "[A]bsent knowledge of a detainee's suicidal tendencies, cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference." *Id.* In other words, the decedent's suicide must have been foreseeable to the particular defendant. *Cook*, 402 F.3d at1117.

Here, Plaintiffs allege that Mitchell had a documented history of mental illness, diagnosed mental conditions, and prior suicide attempts. Although the Complaint does not allege to what extent the Defendants were aware of Mitchell's history, it plausibly suggests that Defendant Igou was aware that Mitchell was a suicide risk as Mitchell had just two days prior been placed in medical for a suicide attempt and was now being placed in solitary confinement under Igou's watch. (Doc. 39-1 ¶¶ 18-20.) More specifically, Mitchell told Igou that she was about to commit suicide by hanging and, as Igou walked away, at least one other inmate told Igou that Mitchell was taking steps to hang herself, but Igou continued to leave, allegedly laughing. *Id.* ¶¶ 23-27. These facts plausibly allege that Igou was aware of a genuine risk that Mitchell might cause herself serious harm and that Igou disregarded that risk by conduct that was more than mere negligence.

Although it is not clear what action officers must take in prisoner suicide cases to meet a constitutional minimum, it is clear that reasonable action must be taken. Under the circumstances alleged here, that Mitchell told Igou that she was about to hang herself and that

6

another inmate then told Igou that Mitchell was taking steps to hang herself, Eleventh Circuit case law may very well require that Igou have taken other actions besides laughing and walking away in order to prevent Mitchell from hanging herself.[5] *See, e.g.,* Cagle, 334 F.3d at 989-90, n.15 (finding that a jailer's monitoring of a suicidal inmate, who had been stripped of his belt and shoelaces and was watched via TV cameras and by once-per-hour visits to his stripped down cell was reasonable and showed a lack of deliberate indifference); *Popham*, 908 F.2d at 1563-64 (finding, on review of grant of summary judgment to defendants, that "[t]he standard procedures followed by Popham's custodians, i.e., removal of shoelaces, belts, socks, and pocket contents" and "[c]losed circuit cell monitoring" demonstrated a lack of deliberate indifference, especially where the officials did not have "the slightest suspicion that Popham might attempt to take his life"); *Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005) ("[A] jury could find that [the officer] subjectively believed that there was a strong risk that [the decedent] would attempt suicide and deliberately did not take any action to prevent her suicide. Those facts, if found by a jury, would establish a constitutional violation.")

Indeed, "jail suicides are analogous to the failure to provide medical care." *Popham*, 908 F.2d at 1563. And it is well-established that "deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Mandel,* 888 F.2d at 789 ("[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.") Based on this case law, the Court is satisfied that at this stage of the case, Plaintiffs' allegations that after Mitchell told Igou that she was about to hang herself and then another inmate told Igou that Mitchell was taking steps to hang herself, that Igou's response of laughing, walking away, and stating that he would like to see that happen are sufficient to state a claim for deliberate indifference.

For the same reasons, the Court cannot find at this time that Igou is entitled to qualified immunity. "[F]or a federal right to be clearly established, the applicable law 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (citation

---

[5] Although Igou asserts that he was leaving to get help, Plaintiffs do not make those allegations. Indeed, Plaintiffs allegations could plausibly indicate that Igou took no action to prevent Mitchell from hanging herself.

omitted). For purposes of whether Plaintiffs' claim against Igou should proceed,[6] "[t]he law is clearly established that jail officials may not act with deliberate indifference to the risk of inmate suicide." *Heggs v. Grant*, 73 F.3d 317, 320 (11th Cir. 1996). Among other things, Plaintiffs allege that Igou "encouraged" Mitchell to commit suicide after she stated she was about to hang herself (Doc. 39-1 ¶ 25); that is quintessentially deliberately indifferent.

Furthermore, the Court does not find undue delay or any other reason to deny Plaintiffs leave to amend. "The Eleventh Circuit cases upholding denials of leave to amend based on undue delay involve delays measured in years and/or extending beyond key deadlines." *Allstate Indem. Co. v. Price*, Civil Action No. 12-0324-WS-B, 2012 U.S. Dist. LEXIS 157447, 2012 WL 5416426, at *2 (S.D. Ala. Nov. 2, 2012) (footnote omitted); *see also Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (citation omitted) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."). Here, discovery has not even begun because Igou's motion to stay discovery was granted. Furthermore, no dispositive motions have been decided in this case, and Igou was permitted to merely supplement his prior motions to dismiss. Finally, Plaintiffs recently-obtained counsel promptly dismissed Plaintiffs' weaker claims and sought leave to add the present claims. Thus, the Court can find no undue delay.

As to Defendant former Warden Blakely, since neither respondeat superior nor vicarious liability exists under § 1983, Plaintiffs must allege that Blakely himself was deliberately indifferent to the possibility of Mitchell's suicide. *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115-16 (11th Cir. 2005). Supervisory liability exists "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation" *Braddy v. Florida Dep't of Labor & Empl. Sec.,* 133 F.3d 797, 802 (11th Cir. 1998). The necessary causal connection can be established "'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[;]' 'when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights"' or when facts support 'an inference that the supervisor directed the

---

[6] Obviously, here, the Court is only assessing the sufficiency of Plaintiffs' allegations. Whether the evidence will show deliberate indifference is another matter altogether.

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)

Here, Plaintiffs  assert that a 1995 article published by a division of the United States Department of Justice noted that "'claims of negligence or deliberate indifference' may arise from placing inmates in cells with obvious 'tie off' points, 'especially in the case that combines an inmate known to be suicidal with a cell with exposed lighting fixtures, air vents, or other design features that all but say 'place noose here.'" (Doc. 39-1 ¶ 41.) Plaintiffs further allege that there was no cut down tool in the solitary confinement area, although such tools are "standard emergency equipment for prisons, particularly in areas that house inmates at risk for suicide." *Id.* ¶¶ 32-34. Plaintiffs further allege that because of the increased risk of self-harm for inmates with mental illness who are housed in solitary confinement, "'suicide watch' housing and other mental health observation units . . . [are] well-known accommodation[s] for inmates with mental health disabilities." *Id.* ¶ 53. But these allegations provide only context because they do not allege Blakely's personal involvement or allow a reasonable conclusion that Blakely caused Mitchell's rights to be violated. However, contrary to Blakely's contentions, Plaintiffs have plausibly alleged Blakely's direct involvement in a violation of Mitchell's rights. Plaintiffs allege that despite having knowledge of Mitchell's risk for suicide and prior suicide attempt(s), Blakely placed Mitchell in a solitary confinement cell with an obvious tie off point and sheets and items that could be used for suicide by hanging despite the availability of a "suicide watch" housing assignment.  (Doc. 39-1 ¶¶ 18-19, 38-39, 43.) The facts alleged here are sufficient; "[a] jury could find that these actions amounted to deliberate indifference to the decedent's vulnerability to suicide." *Camps v. Warner Robins*, 822 F. Supp. 724, 734 (M.D. Ga. 1993) (denying summary judgment where defendant knew inmate was suicidal and had made a recent suicide attempt and nonetheless placed him in general population with access to a sheet and checked on him only once). Therefore, Plaintiffs' complaint against Blakely is not subject to dismissal pursuant to Rules 12 and 8.

*Keith*, which Blakely cites in support, is inapposite and not controlling. *Keith v. Naglich*, No. 5:17-cv-01437-AKK, 2018 U.S. Dist. LEXIS 10147, at *3 (N.D. Ala. Jan. 23, 2018). The deceased inmate in *Keith* had not had any mental health issues for ten years and had been classified as no longer needing mental health care until he was placed on suicide watch for

unspecified reasons and then committed suicide ten days after being released from suicide watch. *Id.* at * 4-5. Furthermore, that complaint failed to allege that the defendants "were either personally involved in the provision of that care or had any knowledge of [the decedent's] medical condition at all." *Id.* at *13. Similarly, in *Cottone*, there were no allegations that the supervisors had engaged in or caused constitutional violations and "the supervisors put in place the necessary procedures." 326 F.3d at 1361. Here, however, the Complaint alleges that Blakely was aware of Mitchell's mental illnesses and history of self-harm, that Blakely was made aware of Mitchell's suicide attempt two days prior, and that Blakely nonetheless housed Mitchell in solitary confinement with a sheet, rather than in an available suicide watch unit, where Mitchell committed suicide the same day. (Doc. 39-1.) That is sufficient.[7] It is well-established that "[w]here prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference." *Greason v. Kemp*, 891 F.2d 829, 835-36 (11th Cir. 1990); *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (stating in dicta that deliberate indifference standard is met if there is a strong likelihood that self-infliction of harm would result from failure to act); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182 (5th Cir. 1986) (plaintiff stated a valid claim where it was known that his decedent, a detainee, had attempted suicide in previous confinement); *Guglielmoni v. Alexander*, 583 F. Supp. 821 (D.Conn. 1984) (defendants' motion for summary judgment denied where inmate had "faked" suicide by hanging then actually hung himself a month later); *Gordon v. Kidd*, 971 F.2d 1087, 1095 (4th Cir. 1992) (denial of summary judgment sustained where defendant failed to take any action in response to information about decedent's suicidal tendencies.)

For the same reasons, Blakely is not entitled to qualified immunity at this time. "One need not find a 'goose case' to imbue a warden at a jail with a constitutional duty to protect a prisoner prone to suicide from self-destruction. . . . a detainee with suicidal tendencies, a condition known or which should have been known by the warden, requires such protective

---

[7] "On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1335 (11th Cir. 2002) (citation omitted). To be clear, Plaintiffs have alleged sufficient facts for one to reasonably infer that defendants Igou and Blakely were deliberately indifferent to a strong likelihood that Mitchell would commit suicide.

action." *Lewis v. Par. of Terrebonne*, 894 F.2d 142, 145-46 (5th Cir. 1990) (finding warden not entitled to qualified immunity on deliberate indifference claim). Thus, Plaintiffs' deliberate indifference claim against Blakely is allowed.

### C.  Remaining Defendants

Plaintiffs also seek to add discrimination claims pursuant to the Americans with Disabilities Act and the Rehabilitation Act against GDOC and GCHC. Finding no substantial reason to deny Plaintiffs leave to add these claims, these claims are allowed.[8]

### CONCLUSION

For the foregoing reasons, Defendant Igou's Motion to Dismiss the initial Complaint and Motion to Dismiss the Amended Complaint (Docs. 11 & 23) and Defendant Blakely's Motion to Dismiss the Amended Complaint and Motion to Dismiss the Second Amended Complaint (Docs. 22 & 40) are **DENIED**. Plaintiffs' Motion to Amend (Doc. 39) is **GRANTED**. Because Defendant Richardson was previously dismissed from this action (Doc. 37), his motions to dismiss (Docs. 13 & 21) are **DENIED AS MOOT WITHOUT PREJUDICE**. The Clerk of Court is **DIRECTED** to docket Doc. 39-1 as Plaintiffs' Second Amended Complaint. A discovery conference will be set by separate order after the remaining defendants are served. Plaintiffs shall promptly effect service.

**SO ORDERED**, this 24th day of October 2019.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[8] Those defendants are free to file any dispositive motions they deem appropriate.