## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

Sheba MAREE and Jeff SPIVA,
surviving parents of Jenna Mitchell,
f/k/a Caleb Mitchell,

     Plaintiffs,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS; GEORGIA BOARD
OF REGENTS; Warden Don
BLAKELY; and, Officer James IGOU,

     Defendants.

CIVIL ACTION FILE NO.
7:19-CV-0046-WLS

## DEFENDANT DON BLAKELY'S
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Mr. Don Blakely, a defendant in the above-styled action and, pursuant to Fed. R. Civ. P. Rule 56, presents his brief in support of his motion for summary judgment as follows:

### STATEMENT OF FACTS AND PROCEEDINGS

Plaintiffs bring this 42 U.S.C. § 1983 action as the parents of inmate Mitchell who committed suicide on December 4, 2017, while imprisoned at Valdosta State Prison (VSP). [Doc. 45.] [1] Defendant Blakely was the warden of VSP at the time

---

[1] Plaintiff Sheba Maree is inmate Mitchell's natural mother and Jeff Spiva is inmate Mitchell's natural father. [Doc. 45 & Ex. 10 Spiva Dep. 12:4-9.]

inmate Mitchell committed suicide. [Ex. 1 Blakely Dep. 117:9-24.] He became warden at VSP in August 2017 and retired based on 30 years of service in May 2018. [Ex. 1 Blakely Dep. 12:2-5 & 13:11-21; Ex. 12 Blakely Aff. ¶ 2.]

Plaintiffs' second amended complaint is the controlling complaint. [Doc. 45.] Plaintiffs allege a violation of the Eighth Amendment based on Defendant Blakely's alleged failure to prevent inmate Mitchell's suicide. [Doc. 45 ¶¶ 68-73.] Consistent with this Court's Order, Plaintiffs state a civil rights claim against Defendant Blakely based only on claims of his direct involvement due to his alleged personal knowledge. [Doc. 44 & Doc. 45 ¶¶ 68-73.] Plaintiffs make no claims based on Defendant Blakely's supervisory capacity (respondeat superior) or claims based on his indirect involvement as a supervisor with knowledge of a risk of suicide generally. [Doc. 45 ¶¶ 68-73.] To the extent that any claim is construed to be based on a theory of respondeat superior or a theory of indirect involvement as a supervisor without knowledge of a risk of inmate Mitchell's suicide, these claims are properly dismissed. [Doc. 44.] See also Popham v. Talladega, 908 F2d 1561 (11th Cir. 1990).

Inmate Mitchell was incarcerated in 2015 for robbery by intimidation in Union County and was sentenced to 20 years to serve 10. [Ex. 2 Maree Dep. 35:21-36:4.] According to Plaintiff Maree, inmate Mitchell had a history of mental illness prior to her incarceration. [Ex. 2 Maree Dep. 21:10-25:7.] While incarcerated at VSP, inmate Mitchell was on the mental health Level 2 caseload, diagnosed with

Mood Disorder NOS [2], Gender Identity Disorder, and Amphetamine Dependence. [Ex. 3 GDC Mental Health Sexual Allegation Evaluation.]

At all relevant times, inmate Mitchell was incarcerated in segregation in the K-2 dorm at VSP. [Ex. 9 Igou Dep. 39:23-40:14.] According to the Unit Manager, Lt. Smith, inmate Mitchell had counseling available to her twice a week. [Ex. 4 Smith Dep. 28:4-15.] Inmate Mitchell could request help for mental health through the mental health counselors and could ask to see a mental health staff person through a security staff member at any time. [Ex. 5 Beasley Dep. 24:14 25:19.] Inmates in segregation where inmate Mitchell was housed would be visited by a counselor or psychiatrist once a week. [Ex. 5 Beasley Dep. 26:8-17.]

While in GDC custody, inmate Mitchell had only two documented self-harm incidents prior to the subject incident. [3] The first occurred at Rogers State Prison (RSP) on November 13, 2015 (two years before the subject incident). [Ex. 6 Supp. Incident Report.] Inmate Mitchell claimed she had cut her left wrist because she did

---

[2] NOS ("not otherwise suggested") is most commonly ascribed when a mood disorder is characterized by depression alternating with short episodes of hypomania (abnormally upbeat with increased activity and energy – a milder form of mania). Bipolar Disorder Not Otherwise Specified. Medically reviewed by Daniel Block, M.D. (Feb. 1, 2020) <https://www.verywellmind.com/diagnosing-bipolar-disorder-not-otherwise-specified-379952>

[3] Plaintiff Maree also describes an incident in 2015 that occurred in Union County jail (before inmate Mitchell was incarcerated with GDC) when inmate Mitchell tried to kill herself; she stated this event was inmate Mitchell's only actual prior suicide attempt that Plaintiff Maree was aware of. [Ex. 2 Maree Dep. 32:15-23 & 55:19-56:7.] There is no evidence that Defendant Blakely knew about this event.

not want to be in prison anymore. Id. The cut was non-life threatening and the bleeding had stopped by the time medical personal was contacted. Id. There is no evidence that Warden Blakely was aware of this prior self-harm event.

Then again, on February 21, 2017, inmate Mitchell attempted to hang herself while incarcerated at VSP. Inmate Mitchell attempted to hang herself because (according to the nurse's report based on inmate Mitchell's statements) she was:

> asking for help for 3 days, officers would not help me, voices will not stop x3 days ago. Still getting use to coming off of meth x 6 months @ Autry. Finally decided to end it, tied bedliner around light fixture & hung myself.

[Ex. 7 Incident Report Def. & Ex. 8 GDC Progress Note.] This self-harm event occurred 9 months before the subject incident and 6 months before Defendant Blakely became warden at VSP.  [Ex. 1 Blakely Dep. 12:2-5 & 13:11-21.] There is no evidence that Warden Blakely was aware of this second prior self-harm event.

Plaintiff Maree also described another alleged attempted "self-harm" that allegedly occurred at Autry State Prison (ASP) prior to inmate Mitchell's transfer to VSP (date unknown). [Ex. 2 Maree Dep. 33:16-21.] Plaintiff Maree stated that while at ASP, inmate Mitchell told her that she had swallowed some screws and pills in front of the warden and nothing was done. [Ex. 2 Maree Dep. 33:16-21.] There is, however, no record or other evidence of this alleged event ever having occurred and no evidence that Defendant Blakely ever knew about this alleged event. This hearsay testimony should, therefore, not be considered. Fed. R. Evid. 802; Jones v. UPS

Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012) (as a general rule, hearsay statements cannot be relied upon to defeat summary judgment).

Plaintiff Maree alleges that on December 2, 2017, she received a letter from inmate Mitchell that indicated inmate Mitchell was going to commit a "suicide stunt" in order to get some mental health attention. [Ex. 2 Maree Dep. 14-21 & 45:19-24.] The letter did not indicate that inmate Mitchell intended to commit suicide. [Ex. 2 Maree Dep. 54:6-18.] Plaintiff further testified that, on the date she received the letter, she contacted the prison on the prison's general telephone line in order to get some mental health attention for her son. [Ex. 2 Maree Dep. 46:6-20.] Plaintiff stated the person answering the phone made no indication that the call came into the warden's office – Plaintiff only called the prison's general information number. [Ex. 2 Maree Dep. 78:3-20.] Indeed, in a declaration obtained by Plaintiffs, the warden's secretary/receptionist testified she has no knowledge of such a call to the warden's office and she was on leave during the subject time period. (Ex. 11 Haithcock Decl.] Thus, Plaintiffs have absolutely no evidence Defendant Blakely or his office ever received a telephone call from Plaintiff Maree or a message about the call.

Plaintiff Maree does not know the name of the employee she spoke to during the December 2, phone call. [Ex. 2 Maree Dep. 46:25-47:4.] She asked to speak with the warden or someone in charge – to which she was told that the warden was not available; so, Plaintiff Maree left a message regarding Mitchell's plans of a suicide

stunt. [Ex. 2 Maree Dep. 77:6-79:3.] Plaintiff has no knowledge whatsoever whether the person she spoke to at VSP ever contacted Defendant Blakely. [Ex. 2 Maree Dep. 82:14-83:8.] Finally, Plaintiff testified that during the phone call to the prison she did not say anything that indicated to the unidentified prison employee that inmate Mitchell was depressed or suicidal. [Ex. 2 Maree Dep. 73:3-6.] [4] Thus, there is no evidence that Defendant Blakely had any knowledge of inmate Mitchell's threats to commit a suicide stunt.

On December 4, 2017, Defendant officer Igou was working in the dorm where inmate Mitchell was housed. On video, Defendant Igou can be seen standing in front of Mitchell's cell at 1:20 p.m. speaking to Mitchell for about 30-40 seconds during a routine inmate check. [Ex. 9 Igou Dep. 56:24-60:6.] During this conversation, inmate Mitchell's demeanor was normal, she indicated she was doing okay, and Defendant Igou had no cause for concern. [Ex. 9 Igou Dep. 56:24-60:6.] Also, during this inmate check, inmate Mitchell made no suicide threat, no request to see a

---

[4] Notably, Plaintiff Maree also testified that either during this first call on December 2 or when someone unidentified from the prison called back later that same evening (the testimony is not clear) she allegedly was told that her son had already tried to commit suicide by hanging and had been revived twice in medical and that inmate Mitchell was in medical. [Ex. 2 Maree Dep. 79:4-80:4.] There is no evidence to substantiate such hearsay allegations and, by all accounts and evidence, inmate Michell did not attempt suicide by hanging and end up in medical unit where staff attempted resuscitation until December 4, 2017. Inmate Mitchell made no suicide attempt whatsoever on December 2, 2017, and this hearsay testimony to the contrary should not be considered. Jones, 683 F.3d at 1293. No evidence suggests Defendant Blakely or anyone knew about a December 2 suicide attempt as this did not occur.

counselor or anyone else, and no request to go to either the Crisis Stabilization Unit (CSU) or the Acute Care Unit (ACU). [5] [Ex. 9 Igou Dep. 56:24-60:6.] About 5 minutes later, at 1:26 p.m. (13:26:15 on the video) the inmate orderly yelled up to Defendant Igou who was on the upper level, informing Defendant Igou that inmate Mitchell wanted to see him (and the orderly may or may not have told Defendant Igou that inmate Mitchel was threatening suicide). [Ex. 9 Igou Dep. 71:11-74:25.] Defendant Igou finished his inmate count upstairs and was back in front of inmate Mitchell's cell down stairs at 1:34 p.m. (only about 14 minutes after Defendant Igou had spoken to inmate Mitchell the first time and only about 8 minutes after the inmate orderly told Defendant Igou that inmate Mitchell wanted to see him again.) [Ex. 9 Igou Dep. 77:1-78:19.]

At this time, 1:34 p.m., Defendant Igou saw that inmate Mitchell had a noose around her neck, tied off on a fixture, and inmate Mitchell was standing on her toilet. [Ex. 9 Igou Dep.78:22-79:24.] Inmate Mitchell insisted that she wanted to speak to Sgt. Richardson, the warden, or mental health staff, or she was going to kill herself. [Ex. 9 Igou Dep. 79:6-24.] Defendant Igou decided to contact Sgt. Richardson and made no attempt to contact Warden Blakely. [Ex. 9 Igou Dep. 79:3-80:24 & 82:2-

---

[5] The ACU and CSU are units where mental health providers may assign an inmate to go if they are suicidal, a need closer monitoring, or a suicide-prevention cell. [Ex. 4 Smith Dep. 30:14-32:22.]

17.] Less than a minute later, still at 1:34 p.m., Defendant Igou left to locate Sgt. Richardson. [Ex. 9 Igou Dep. 81:5-83:19.] Six minutes later, Defendant Igou and Sgt. Richardson returned to the dorm together at 1:40 p.m. [Ex. 9 Igou Dep. 101:10-24.] The two officers found inmate Mitchell hanging, unconscious, and inmate Mitchell did not appear to be breathing; inmate Mitchell had also defecated and urinated on herself.  [Ex. 9 Igou Dep. 109:10-110:10.] Defendant Igou lifted inmate Mitchell up to relieve the pressure on inmate Mitchell's neck but then he and Sgt. Richardson realized they needed to get a cutting tool to get he down. [Ex. 9 Igou Dep. 110:10-112:25 & 114:4-13.] Sgt. Richardson directed Defendant Igou to go get a cutting tool and, as directed, Defendant Igou left while Sgt. Richardson waited outside the cell. [Ex. 9 Igou Dep. 114:4-13 & 128:1-10.] About 7 minutes later, Defendant Igou returned with the scissors and he and Sgt. Richardson headed back into inmate Mitchell's cell. [Ex. 9 Igou Dep. 130:16-131:3 & 132:8-133:15.]

Next, inmate Mitchell was cut down immediately and then Defendant Igou conducted CPR until two nurses arrived to take over CPR. [Ex. 9 Igou Dep. 133:7-15 136:2-18.] The body was then transported via a gurney and medical golf cart to the prison medical unit. [Ex. 9 Igou Dep. 145:11-146:25.] A short time later, an ambulance took the body to the hospital. With Plaintiffs' consent, life support was removed and inmate Mitchell passed away without ever having regained consciousness. [Ex. 2 Maree Dep. 69:8-12; Ex. 1 Blakely Dep. at exhibit 10 § III

"Captain's Chief of Security Review".]

Defendant Blakely was not involved in the events surrounding inmate Mitchell's suicide on December 4, 2017, until he was informed of these events after the fact. The facts make clear, Defendant Blakely had no knowledge of the December 2, 2017, suicide stunt threat. [Ex. 12 Blakely Aff. ¶¶ 8-10.] Defendant Blakely testified that he had no knowledge of inmate Mitchell's December 2, 2017, threat to perpetrate a suicide stunt. [Ex. 1 Blakely Dep. 158:13-160:17.] The undisputed evidence is that Defendant Blakely was not made aware Plaintiff Maree had called the institution about her son's suicide "stunt" plan two days before Mitchell committed suicide (or at any time prior). [Ex. 1 Blakely Dep. 158:13-160:17.] Warden Blakely did not speak to Plaintiff Maree until after inmate Mitchell's suicide attempt on December 4, 2017, when the warden called Plaintiff Maree to notify her about Mitchell's condition. [Ex. 1 Blakely Dep. 158 & 259; Ex. 12 Blakely Aff. ¶¶ 8-10.] Based on the undisputed evidence, Defendant Blakely had no knowledge of inmate Mitchell's risk of suicide on December 4, 2017.

Defendant Blakely also had no knowledge of inmate Mitchell's prior mental health history or prior self-harm invents. [Ex. 12 Blakely Aff. ¶¶ 4 & 5.] The evidence makes clear, Defendant Blakely did not know or have reason to know about the prior self-harm events that occurred at the jail, RSP, and VSP. [Ex. 12 Blakely Aff. ¶¶ 4-7.] First, Defendant Blakely did not know of inmate Mitchell's mental

health history or history of self-harm prior to her suicide "stunt" on December 4, 2017. Defendant Blakely never reviewed the mental health records of inmate Mitchell or any other inmate. [Ex. 1 Blakely Dep. 144:16-145:6.] Defendant Blakely has no recollection of what inmate Mitchell looked like and no recollection of ever having spoken to the inmate. [Ex. 1 Blakely Dep. 117:8-24.] Plaintiffs have no evidence that Defendant Blakely had any knowledge whatsoever of inmate Mitchell's prior history of self-harm.

Second, there was no reason for Warden Blakely to have knowledge of inmate Mitchell's prior history of self-harm. [Ex. 12 Blakely Aff. ¶¶ 6 & 7.] While Defendant Blakely was warden at VSP, VSP housed between 1,500 and 1,700 inmates, he could not reasonably be expected to know the mental health history of this large transient population. [Ex. 1 Blakely Dep. 117:18-24.] Moreover, the warden was not involved in the classification, assignment, or evaluation of mental health inmates. Security classifications and housing assignments were made by the classification team under the direction of the deputy warden of care and treatment. [Ex. 1 Blakely Dep. 58:18-61:6.] The classification team (also known as classification committee) which included at least one mental health staff member, determined where inmate Mitchell would be assigned at the prison. [Ex. 1 Blakely Dep. 58:18-61:6, 66:8-25, & 67:1-21.]

Moreover, it was the responsibility of the mental health staff to decide whether

10

to place (or not to place) an inmate in either the ACU or CSU for providing suicide watch or a suicide prevention cell. [Ex. 1 Blakely Dep. 64:16-65:13, 97:13-25; Ex. 12 Blakely Aff. ¶¶ 6 & 7.]  The warden was not a mental health professional and did not second guess mental health staff's professional judgment regarding assignment or placement in a suicide prevention cell. [Ex. 1 Blakely Dep. 91:7-92:15; Ex. 12 Blakely Aff. ¶ 7.] An inmate could make a request, but it was up to mental health staff whether to grant an inmate's request to be put in ACU or CSU. [Ex. 1 Blakely Dep. 112:12-25.] There is no evidence that inmate Mitchell ever made such a request. In addition, the mental health staff, and not the warden, determined the mental health level classification of inmate Mitchell as such professionals had the expertise to make mental health decisions. [Ex. 1 Blakely Dep. 58:18-61:6, 66:8-25, & 67:1-21.] Based on these undisputed facts, it is clear that Defendant Blakely had no knowledge of inmate Mitchell's mental health history.

Undisputedly, Defendant Blakely had no knowledge of either inmate Mitchell's mental health history or her specific threats to engage in a suicide stunt in early December 2017. [Ex. 12 Blakely Aff. ¶¶ 8-10.] Plaintiffs have no evidence to the contrary. Accordingly, Defendant Blakely is entitled to summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). <u>See also</u> <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002). The moving party bears the initial burden of showing, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Cortex</u>, 477 U.S. at 323; <u>see also</u> <u>Allen v. Bd. of Public Educ. for Bibb Cnty.</u>, 495 F.3d 1306, 1313 (11th Cir. 2007). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue…[of] fact." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112,1116 (11th Cir. 1993). "[M]ere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment. <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 598 (11th Cir. 1995) cert den. sub nom. <u>Jones v. Resolution Trust Corp.</u>, 516 U.S. 817 (1995). <u>See also</u> <u>Walker v. Darby</u>, 911 F.2d 1573, 1576–77 (11th Cir. 1990). The requirement to view the facts in the nonmoving party's favor extends only to genuine disputes over material facts. <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1165 (11th Cir. 2009). "The substantive law controls which facts are material and which are irrelevant." <u>Howard v. Memnon</u>, 572 F. Appx. 692, 694 (11th Cir. 2014) (per curiam). A mere scintilla of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment. <u>Garczynski</u>, 573 F.3d at 1165. "Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (internal quotations omitted). If "a party…fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial[,]" Rule 56(c) mandates that summary judgment be entered against the non-movant. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1980).

## ARGUMENT AND CITATION OF AUTHORITY

**I.  The undisputed evidence shows no Eighth Amendment claim because Defendant Blakely had no prior knowledge of inmate Mitchell's history of self-harm or Mitchell's intention to perpetuate in a suicide stunt.**

It is axiomatic that § 1983 does not create vicarious liability. <u>Thompson v. Bass</u>, 616 F.2d 1259, 1268 (5th Cir. 1980); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979). "Supervisory liability under § 1983 occurs only when the supervisory personally participates in the unconstitutional conduct or when there is a causal connection between the actions of a supervisor and the violation." <u>Parker v. Warden Elmore County Jail</u>, Appeal No. 20-14495, 2021 U.S. App. LEXIS 9685 *2-3 (11th Cir. April 2, 2021) citing <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). [6]

In the Eighth Amendment context, § 1983 requires that the supervisor's

---

[6] The present supervisory case against Defendant Blakely is based only on his alleged personal participation and not a "causal connection" theory of liability. Defendant notes that a causal-connection case against a supervisor is established when there is evidence to show: 1) widespread abuse providing notice to the supervisor of a problem; 2) the supervisor enforces a custom or policy that results in

personal participation be deliberate and indifferent to the needs of the prisoner. To maintain an Eighth Amendment deliberate indifference claim, Plaintiffs must have evidence from which a reasonable jury might conclude that Defendant Blakely "had 1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed]…that risk; (3) by conduct that is more than mere negligence." Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir. 2003). "[I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard 'a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005).

Furthermore, "[i]n the context of jail suicides, an allegation of deliberate indifference must be considered in light of the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies." Popham v. Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). "[A]bsent knowledge of a detainee's suicidal tendencies, cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference." Id. In other words, the decedent's suicide must have been foreseeable to the particular defendant. Cook, 402 F.3d at 1117. See also Keith v. Naglich, Case No.

---

deliberate indifference to constitutional rights; 3) the supervisor directs subordinates to act unlawfully; or, 4) the supervisor knew a subordinate would act unlawfully and failed to stop them. See, e.g., Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008). Plaintiffs make no such causal-connection type allegations against Defendant Blakely in the instant action. [Doc. 45.]

5:17-cv-01437-AKK, 2018 U.S. Dist. LEXIS 10147 (N.D. Ala. Jan. 23, 2018) ("[I]n the Eleventh Circuit, indifference to a class of suicidal inmates does not subject an official to supervisory liability for the suicide of a particular class member."). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Tittle v. Jefferson Cnty. Comm., 10 F.3d 1535, 1540 (11th Cir. 1994). "[I]n this circuit a finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual." Tittle, 10 F.3d at 1539. "[A]bsent knowledge of a detainee's suicidal tendencies, the cases [in the Eleventh Circuit] have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference." Popham, 908 F.2d at 1564.

Applying these legal principals here, Defendant Blakely is entitled to summary judgment. The undisputed evidence is that Defendant Blakely had no knowledge of inmate Mitchell's prior history of self harm before inmate Mitchell committed suicide on December 4, 2017. Given that Warden Blakely was responsible for the supervision of 1,500+ inmates and given that mental health professionals and other ranking security personnel determined inmate Mitchell's security classification, dorm assignment, mental health level classification, and assignment to a suicide prevention/watch cell, Defendant Blakely had no reason to know of inmate Mitchell's individual circumstances particularly those events that

occurred prior to him becoming warden. Likewise, the undisputed evidence is that Defendant Blakely had no knowledge of inmate Mitchell's more recent intention to perpetrate a suicide stunt prior to the events that led to inmate Mitchell's death on December 4, 2017. Plaintiffs have no admissible evidence suggesting otherwise and cannot satisfy their burden of proof on an essential element of their case. Daniels v. Felton, 823 Fed. Appx. 787 (11th Cir. 2020) ("Because [plaintiff] failed to show [Defendants] subjectively knew of a risk of serious harm to him, he could not meet his burden of proving that they violated his Eighth Amendment rights by deliberately disregarding such risk."). Accordingly, Defendant is entitled to summary judgment.

## II. Defendant Blakely is protected from liability by qualified immunity.

Qualified immunity shields "government officials performing discretionary functions…from liability…insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818. "[A]ll but the plainly incompetent or one who is knowingly violating the federal law" are entitled to the protection of qualified immunity. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations and citations omitted). To receive qualified immunity, a defendant must first establish he was acting within his discretionary authority during the events in question. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Here, Defendant Blakely was acting within his discretion when making the decision not to

review inmate Mitchell's mental health records or otherwise evaluate Mitchell's suicide risk. Thus, the burden shifts to Plaintiffs to demonstrate this Defendant was not entitled to qualified immunity. Id. at 1358. To make this showing at the summary judgment stage, Plaintiffs must first establish the possibility of a violation of a constitutional right based on admissible evidence. Saucier v. Katz, 533 U.S. 194, 200 (2001); and Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). As discussed above, this Plaintiff cannot do.

Assuming arguendo that Plaintiffs could establish a constitutional violation, Plaintiffs must next demonstrate the constitutional right was clearly established at the time of the allegations. Saucier, 533 U.S. at 200. To determine whether the law clearly established conduct as a constitutional violation, Defendant must have had "fair warning" that his conduct violated a constitutional right. Fransen, 857 F.3d at 851 (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011). Fair warning comes in the form of binding caselaw from the Supreme Court, the Eleventh Circuit, or the highest court of the state that makes it obvious to all reasonable government actors in the defendant's position that what he is doing violates a federal law. Id. citing Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012).

First, a plaintiff may point to binding precedent that is materially similar. Fransen, 857 F.3d at 851. This method requires the Court to consider whether the factual scenarios faced by the defendant are distinguishable from the circumstances

facing a government official in a previous case. Id. Second, a plaintiff may invoke a "broader, clearly established principle" that he asserts should control the novel facts of the situation. Id. When a plaintiff proceeds in this way, he must show that case law demonstrated the principle with obvious clarity so that every objectively reasonable government official facing similar circumstances would know that his conduct violated federal law when he acted. Id. Finally, a right is 'clearly established' when the defendant's conduct lies so obviously at the very core of what the constitution prohibits that the unlawfulness of the conduct was readily apparent to any official, notwithstanding the lack of case law. Id. Courts recognize the obvious-clarity exception where conduct is so bad that case law is not needed. Vineyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002). This is a narrow exception to qualified immunity. Priester, 208 F.3d at 926-27.

Although Eleventh Circuit precedent unquestionably clearly establishes a prisoner's right to mental health care, no case law has extended this right to mandate that a warden of a large prison is required to familiarize themself with each inmate's mental health history and interject their authority in making classification or cell assignment decisions. In general, the prison suicide cases split down the middle into those where the officials were aware of the potential for suicide and those where they were unaware; summary judgment on the grounds of qualified immunity is usually granted where defendants had no warning of decedent's suicide attempt.

Edwards v. Gilbert, 867 F.2d 1271 (11th Cir. 1989); Popham, 908 F.2d at 1561 et seq.; Schmetz v. Monroe County, 954 F.2d 1540 (11th Cir. 1992); Tittle, 10 F.3d at 1535 et seq.; and, Haney v. City of Cumming, 69 F.3d 1098 (11th Cir. 1995).

Applying these standards here, this is a case where Defendant was unaware of the potential for suicide. No clearly established law prohibited Defendant Blakely's conduct. Plaintiff cannot point to any contrary binding precedent. In summary, Defendant Blakely is entitled to qualified immunity because no clearly established law holds a prison warden liable for an inmate suicide without his personal knowledge of the inmate's immediate threat of self-harm or knowledge of the inmates history of self-harm – and here Defendant Blakely had no knowledge of either inmate Mitchell's immediate threat of self harm or her history of self-harm. Moreover, no clearly established law required a warden of a large prison (housing more than 1,500 inmates) to familiarize himself with the mental health history of each inmate so as to have such personal knowledge. Finally, no clearly established law required a warden of such a large prison population to second guess mental health staff on decisions involving whether an inmate should be housed in a suicide prevention cell. Therefore, Plaintiffs' claims are barred by qualified immunity.

## CONCLUSION

Based on the foregoing, Defendant Blakely respectfully requests that this Court grant his motion for summary judgment.

Respectfully submitted this 6th day of August, 2021.

**SATCHER & MCGOVERN LLC**

/s/ Annarita L. McGovern
ANNARITA L. MCGOVERN
Georgia Bar No. 098141

/s/ Terry L. Long
TERRY L. LONG
Georgia Bar No. 457460

***Counsel for Defendant Don Blakely***

288 South Main Street
Suite 100
Alpharetta, Georgia 30009
Office: (770) 765-0225
Direct: (770) 847-7280
amcgovern@satchermcgovernlaw.com
tlong@satchermcgovernlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify I have this day served a true and correct copy of the foregoing

**DEFENDANT DON BLAKELY'S BRIEF IN SUPPORT OF HIS MOTION**

**FOR SUMMARY JUDGMENT** with the clerk of court using the CM/ECF system

which automatically sends notification of such filing as follows:

David B. Shanies
411 Lafayette Street, Sixth Floor
New York, New York 10003
david@Shanieslaw.com
*Co-counsel for Plaintiff*

American Civil Liberties Union Foundation of Georgia, Inc.
Sean J. Young
P.O. Box 77208
Atlanta, Georgia 30357
syoung@acluga.org
*Co-counsel for Plaintiff*

Vincent A. Toreno
Alain P. Fernandez
KEN DAVID & ASSOCIATES, LLC
229 Peachtree Street
International Tower, Suite 950
Atlanta, Georgia 30303
vince.toreno@atkinsdavid.com
alain.fernandez@atkinsdavid.com
*Counsel for Defendant James Igou*

Robert Shapiro
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
RShapiro@LAW.GA.GOV
*Counsel for remaining State Defendants*

This 6th day of August, 2021.

**SATCHER & MCGOVERN LLC**

/s/ Annarita L. McGovern
ANNARITA L. MCGOVERN
Georgia Bar No. 098141
***Counsel for Defendant Don Blakely***

288 South Main Street
Suite 100
Alpharetta, Georgia 30009
Office: (770) 765-0225
Direct: (770) 847-7280
amcgovern@satchermcgovernlaw.com