IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

SHEBA MAREE, surviving parent of    :
Deceased Jenna Mitchell, *et al.*,    :
   :
     Plaintiffs,    :
   :
v.    :    CASE NO.:  7:19-CV-00046 (WLS)
   :
Corrections Officer JAMES LEE ROY    :
IGOU, *et al.*,    :
   :
     Defendants.    :

## ORDER

     Before the Court is Plaintiffs' "Combined Motion for an Extension of Time, For Leave to Serve an Additional Request for Production, and to Compel," filed on July 7, 2021. (Doc. 96.)  For the reasons explained herein, the motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.  Procedural History

     Plaintiffs Sheba Maree and Jeff Spiva are the parents of the deceased Jenna Mitchell, who died after hanging herself while incarcerated at Valdosta State Prison ("VSP"). (Docs. 1 & 19 ¶¶ 5-6.) Plaintiffs allege that Mitchell, born Caleb Mitchell, "had a well-documented history of mental illness, self-harm, and suicidal ideation and attempts" of which Defendants were aware. (Doc. 76 ¶¶ 15-16.) Plaintiffs bring this wrongful death suit against the Georgia Department of Corrections ("GDC") and the Georgia Board of Regents (together, the "State Defendants") for violation of the Americans with Disabilities Act and the Rehabilitation Act. (Doc. 76 at 11-12.) They also sue Defendant Officers Don Blakely and James Lee Roy Igou

1

for deliberate indifference in violation of the Eighth Amendment and 42 U.S.C. § 1983. *Id.* at 12-13.

Discovery was initially set to close in this case on August 10, 2020. (Doc. 57.) Expert disclosure deadlines were also set in the Initial Discovery Order, with Plaintiff's rebuttal expert materials due by July 20, 2020. *Id.* at 2. A stipulated Confidentiality and Protective Order, signed by all Parties, was also approved by the Court. (Doc. 65.) Plaintiffs' three requests to extend the discovery deadline were granted by the Court. (Docs. 62, 73, 84.) Thereafter, the Parties attempted to resolve this case by mediation, but the mediation was unsuccessful. (*See* Docs. 85, 86, & 87.) As a result, discovery last closed on July 9, 2021. (Docs. 86 & 87.)

Plaintiffs now seek various forms of discovery-related relief, including another extension of the discovery deadlines. (Doc. 96.) The State Defendants object to most of the relief Plaintiffs request, except that they ask that the Court extend the discovery period by twenty-one days for the sole purpose of completing Rule 30(b)(6) depositions and that dispositive motions be due thirty days thereafter. (Doc. 99.) Defendants Igou and Blakely adopt and incorporate the arguments and relief requested by the State Defendants. (Docs. 101 & 102.)[1]

Because the Parties agreed to an extension of the discovery period and Plaintiffs' motion to compel would not ripen until after dispositive motions were due, the Court stayed the deadline for filing dispositive motions. (Doc. 103.) The Court now addresses each of Plaintiffs' requests for relief in turn.

---

[1] Blakely's Motion to Adopt and Incorporate (Doc. 102) is **GRANTED**.

## II.     Discussion

### A. Additional Request for Production of Documents

Plaintiffs ask to serve an additional request for production of documents concerning "malfunctioning or non-functioning radios during the relevant time period, including any written complaints or requests concerning the radios." (Doc. 96-1 at 23-24.) They assert that they only recently learned about "the problems with the radios" for the first time at Igou's deposition on June 28, 2021. *Id.* at 23. Igou testified at his deposition that "I had problems with the radio. Had I not had the problem with the radio, I could have radioed Sergeant Richardson and said, hey, I need you now at the cell and then we wouldn't be having this conversation." (Doc. 96-6 at 7.)

The State Defendants argue that Plaintiffs have "long been aware" of Igou's issues with his radio because Plaintiffs were served an audio recording of an interview with Igou in which Igou discussed these issues. (Doc. 99 at 18.) The State Defendants further argue that Plaintiffs' request to serve this request "is plainly not proportional to the needs of this case" as Igou conceded in his deposition that he does not recall "whether or not [he] used the radio to try to get Sergeant Richardson before leaving" Mitchell's cell. (Doc. 99 at 18-19.)

Because Plaintiffs have served the maximum number of requests for production, they cannot serve another request without the Court's permission. M.D. Ga. L.R. 34. The Local Rules do not specify on what grounds the Court should allow a party to serve an additional request for production, but the rules and spirit of discovery are instructive. As the Rules provide:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). "The Courts have long held that relevance for discovery purposes is much broader than relevance for trial purposes." *Hallmark Ins. Co. v. Fannin*, No. 1:17-CV-04839-CAP, 2018 U.S. Dist. LEXIS 233475, at *7 (N.D. Ga. July 16, 2018) (citation omitted).

Here, Igou has clearly testified that the problems with his radio could have affected his course of action on the day Mitchell hung herself. Thus, one request for production concerning malfunctioning or nonfunctioning radios appears relevant and proportional to this case. Plaintiffs have explained why there were not sooner aware of the extensive problems with radios and its impact on Igou's actions, and the Court does not find that they failed to act diligently in discovering this information sooner, especially given their efforts to conduct depositions and gather evidence earlier which were delayed by the State Defendants. (*See* Doc. 96-2.) Further, the Court cannot find that Defendants would be unduly burdened or prejudiced by this additional request for production.

Accordingly, Plaintiff's request to serve an additional request for production, as described in their motion (Doc. 96-1 at 23-24), is **GRANTED**.

### B. Motion to Compel

Plaintiffs ask the Court to compel GDC to comply with Plaintiffs' revised 30(b)(6) deposition notice and to produce a witness to testify about Topics 1.a., 1.b. and 2, which are as follows:

> 1.a. "The policies, procedures, and practices in effect at Georgia state prisons from 2015 through 2018 concerning the Americans with Disabilities Act and the Rehabilitation Act (collectively, the 'ADA/RA') as they pertain to inmates with serious mental health issues."

> 1.b. "The policies, procedures, and practices in effect at Georgia state prisons from 2015 through 2018 concerning legal and practical training for prison officials and employees regarding their obligations under the ADA/RA as they pertain to inmates with serious mental health issues, including, in particular, responding to threats of and/or attempts at self-harm by inmates."

> 2. All of the inmate mental health grievances and the incident reports and emergency reports involving attempted suicide, death or suicide, or self-

injurious behavior filed at Valdosta State Prison between January 1, 2015, and December 6, 2017.

(Doc. 96-3.)

Plaintiffs argue that the revised notice was served on March 2, 2021, after Plaintiffs revised it within one week of receiving GDC's objections to the first notice. (Doc. 96-1 at 26.) On June 10, 2021, GDC served its objections to the revised notice asking that Plaintiffs "describe with greater specificity the particular aspects of each policy you wish to discuss" and to "serve an amended notice of deposition describing specific areas of training about which you are requesting the agency designee to give testimony." (Doc. 99-13 at 3.) Plaintiffs argue that GDC's objections to the revised notice were not timely, as they were served more than three months after the notice was served. (Doc. 96-1 at 26-27.) Further, Plaintiffs argue that Topics 1.a. and 1.b. are sufficiently particular, and that they wish to depose a GDC representative as to any of the policies covered by those topics, including relevant "Post Orders" that they learned about two weeks before filing their motion. *Id.* at 27-28. GDC offers no opposition regarding Topics 1.a. and 1.b. as raised in Plaintiffs' motion to compel. (*See* Doc. 99.) The Court finds that these topics seek relevant information at this phase, that the topics are sufficiently particular, and that GDC is not unduly burdened by producing a witness on these topics. Thus, Plaintiff's motion to compel a Rule 30(b)(6) GDC representative to testify on Topics 1.a. and 1.b. is **GRANTED**.

As to Topic 2, Plaintiffs assert that they have "drastically narrowed the scope of Topic No. 2" by agreeing "to limit the scope of documents only to those concerning inmates who died by hanging and who had more than one suicide attempt by hanging" and "also provided GDC with the list of forty-five inmates covered by the documents. . . ." (Doc. 96-1 at 30); (Doc. 99-14 at 4.) Plaintiffs also wish to "examine the witness about the global figures of the incidents covered in these documents, such as the total number of inmate deaths by suicide, the total number of attempted suicides, and the total number of instances of self-injurious behavior." (Doc. 99-14 at 4.) GDC responds that this information is not relevant, implicates non-party privacy concerns, imposes an undue burden on GDC, and is not proportional to the needs of the case. (Doc. 99 at 22-23.)  GDC argues that the Eleventh Circuit Court of

Appeals and district courts in Georgia have found that other incidents of inmate suicide are not relevant to claims of deliberate indifference or claims brought under the ADA/RA. *Id.* at 25-27, 27 n.8. In their reply brief, Plaintiffs do not counter GDC's legal arguments, but argue only that GDC failed to timely serve its objections to the revised notice. (Doc. 105.)

As an initial matter, some case law supports GDC's contention that evidence of other inmates' suicides is not relevant to Plaintiffs' deliberate indifference or ADA/RA claims. *See, e.g.*, *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1105 (11th Cir. 2005) ("[Section] 1983 requires that the defendant have 'notice of the suicidal tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual.' Other suicides occurring in the [facility] are in no way probative of the [defendant's knowledge of [an inmate's] suicidal tendencies.") (citation omitted). Plaintiffs have failed to rebut this contention and show why the evidence requested in Topic 2 would be relevant for their claims. Indeed, they have not brought the types of claims for which this evidence would more likely be relevant. *Cf. Kaether v. Armor Corr. Health Servs.*, No. 16-62950-CIV-ZLOCH/HUNT, 2017 U.S. Dist. LEXIS 229678, at *4 (S.D. Fla. Oct. 17, 2017) (where plaintiff sought to "prove a pattern of deliberate indifference by Armor"); *Perez v. City of Sweetwater*, No. 16-24267-CIV-ALTONAGA/Goodman, 2018 U.S. Dist. LEXIS 237537, at *18 (S.D. Fla. Jan. 8, 2018) (discussing deliberate indifference claim "premised on failure to train or supervise").

Furthermore, the Rule Plaintiffs cite in support provides only that Parties promptly confer about the matters for examination; there is no deadline for objecting to a Rule 30(b)(6) notice. Fed.R.Civ.P. 30(b)(6). Beyond that, it is clear that (1) on February 24, 2021, GDC objected to the inclusion of Topic 2 as "not relevant, overly burdensome, and not proportional to the needs of the case" (Doc. 99-11), shortly after the initial notice was served; and (2) the revised notice provides April 12, 2021 (or an alternative date as agreed upon) as the date of the deposition, but GDC filed a consent motion to stay discovery on April 12th that the Court granted. (Docs. 85 & 85.) Thus, the Court cannot find that GDC untimely objected to Topic 2. Accordingly, because Plaintiffs have failed to show why Topic 2 is relevant to their claims or that GDC untimely objected, Plaintiffs' motion to compel a GDC representative to testify about Topic 2 is **DENIED**.

### C. Exchange of Expert Reports

Plaintiffs explain that they understand that their fact and expert discovery deadline was July 9, 2021, and that expert reports are due ninety days before trial pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(i). (Doc. 96-1 at 24.) Plaintiffs state that they recently learned that they may be mistaken about these deadlines, that the mistake was made in good faith, and that there will be no prejudice if they are allowed to designate experts and exchange expert reports during an extension of the discovery period. *Id.* They then explain how they meet the standards warranting a reopening of deadlines for good cause and due to excusable neglect and argue that expert testimony on the "complicated issues" in this case would be beneficial to a factfinder. *Id.* at 26. They ask "that the deadline to disclose expert witnesses be set to the same extended deadline to complete fact discovery, and that the deadline to exchange expert reports be set to ninety days before trial, with both Plaintiffs and Defendants reserving their rights to depose the other parties' expert witnesses." (Doc. 96-1 at 24.)

Defendants argue that this request should be denied because Plaintiffs have failed to show good cause or excusable neglect. (Doc. 99 at 22.) Defendants contend they will be prejudiced by "a truncated timeline to both complete expert discovery and prepare and file dispositive motions" and by their inability to depose witnesses who have already been deposed about facts that form the basis of the expert's opinion. *Id.* at 20. They further contend that Plaintiffs have waited the duration of the nine-month extension of the initial discovery deadline to make this request and that Plaintiffs still have not disclosed the identity of their expert witnesses. *Id.* at 21-22. Defendants further argue that Plaintiffs' mistake about when their expert materials were due does not constitute excusable neglect. *Id.* at 21.

The initial Scheduling and Discovery Order provided:

> [E]ach party must serve upon other parties disclosures relating to expert witnesses, as required by Rule 26(a)(2)(A)–(B) of the Federal Rules of Civil Procedure, by the following dates: **Plaintiff's case-in-chief— Monday, May 11, 2020; Defendant's case-in-chief— Wednesday, June 10, 2020; Plaintiff's rebuttal— Monday, July 20, 2020**.

(Doc. 57 at 2.) Rule 26(a)(2)(B) requires that "[u]nless otherwise stipulated or ordered by the court, th[e] disclosure[s] must be accompanied by a written report—prepared and signed by

the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). Thus, unless the Parties stipulated otherwise, the Parties' expert disclosures and expert reports were initially due no later than July 20, 2020. (Doc. 57 at 2.)

On August 10, 2020, Plaintiffs' counsel filed a letter requesting, in light of the challenges presented by the COVID-19 pandemic, "that the deadline for all discovery, including expert discovery, be extended to January 8, 2021." (Doc. 61.) The letter stated that "[a]ll Defendants consent to this request. . . ." *Id.* Thus, noting that "the motion was filed on the day discovery was set to end and after the expiration of several of the discovery-related deadlines that Plaintiffs now seek to extend" and that "all Defendants consent to this request," the Court granted the motion and extended the discovery deadlines per Plaintiffs' request. (Doc. 62.) The Court did not decline to extend the expired expert-related deadlines. *Id.* Only in the subsequent orders granting extensions of the discovery deadlines did the Court specify that only the "unexpired discovery-related deadlines" were being extended. (Docs. 73 & 84.) The State Defendants did not object to the first "consent" letter, but they did object to Plaintiffs' counsel's subsequent "consent" letters because their contents were not shared with opposing counsel. (Docs. 74 & 82.) However, the State Defendants did "not oppose" the requested extensions but only "object[ed] to any further extension of time for expert witness discovery. . . as fact and expert witness discovery have not been bifurcated in this case." (Doc. 82 at 3.) The State Defendants did not object to Plaintiff conducting expert witness discovery during the extensions; the Court clearly expressed that it understood that the State Defendants' objection was only to Plaintiffs suggestion "that additional time may be needed in the future for expert discovery." (Doc. 84 at 1.) The discovery deadline was reset a final time pursuant to a consent motion filed by the State Defendants for the Parties to pursue mediation. (Doc. 86.)

Thus, because the fact and expert discovery deadlines closed simultaneously on July 9, 2021, Plaintiffs need not meet the additional hurdle of showing excusable neglect. However, given the procedural history just recounted and the arguments advanced by Plaintiffs, the

Court finds that Plaintiffs have shown excusable neglect and good cause to allow them a brief extension of the discovery period to complete fact and expert discovery. The State Defendants will not be prejudiced as they too will have had nearly a year and a half to have completed expert discovery and will now presumably only need a brief extension to review Plaintiffs' expert materials and conduct any necessary follow-up discovery. They are not prevented from following-up with previously deposed witnesses, except as limited by the Federal Rules and Local Rules. Should they need relief from the Court to alleviate any prejudice, *e.g.*, an order allowing them to re-depose a particular witness, the State Defendants can file an appropriate motion. Although Plaintiffs should have disclosed experts by now, their deadline to do so has not passed, and because expert testimony on the issues in this case would be beneficial, and perhaps necessary, the Court finds good cause to allow a brief extension of the expert discovery deadlines.

### D. Extension of the Discovery Deadline

Plaintiffs request a sixty-day extension of the discovery deadline, with dispositive motions due thirty days thereafter, and trial to start approximately two months thereafter. (Doc. 96.) Plaintiffs assert that they have yet to receive various types of discovery that they requested from Defendants. Thus, during this extended discovery period, Plaintiffs wish to obtain: additional medical records for Mitchell, GDC's "post orders" and information as to why the former post orders cease to exist, information regarding malfunctioning or non-functioning radios, and the identity of Blakely's secretary in December 2017. (Doc. 96-1 at 7-13). Plaintiffs also vaguely indicate that there are additional depositions they wish to conduct, including "follow-up and additional interviews of incarcerated non-parties." *Id.* at 13-14. Plaintiffs also wish to complete expert discovery, as discussed above. The Defendants request a twenty-one-day extension solely to complete Rule 30(b)(6) depositions, and they specifically ask that Plaintiffs not be allowed to "notice any additional depositions or serve any additional discovery requests." (Doc. 99 at 28.)

In balancing the interests of the Parties, the good cause shown, the amount of time that has passed since the motion was filed, and the Court's interests, the Court hereby extends the deadlines as follows:

- Expert disclosures and reports are due no later than: **Friday, October 22, 2021**

- Fact and Expert Discovery Completion Deadline: **Friday, November 5, 2021**

- *Daubert*[2] and Dispositive Motion Deadline: **Monday, December 6, 2021**

- Expected Trial Date: **Monday, February 7, 2022**

All fact and expert discovery must be completed by the deadlines above unless the Court orders otherwise. The Court declines to limit the scope or nature of the discovery during this extended period, except as otherwise provided in this Order, especially because the State Defendants have indicated that they may need to conduct additional depositions depending on the expert discovery. However, because this extension is brief, the Parties should focus their time and resources on the important aspects of their case to ensure that all necessary discovery can be completed during this extension.

This case will be three years old in March 2022, and the Parties have now received five extensions of the discovery deadlines. As such, no further extensions will be granted except to prevent manifest injustice on grounds not reasonably foreseeable or avoidable upon timely written motion. The Parties are instructed to act diligently and in good faith to resolve all discovery issues and complete discovery within the timeframe established herein. Unless otherwise ordered, the Parties should expect to proceed to trial during the Court's three-week February 2022 trial term, beginning on Monday, February 7, 2022. The Court is not inclined to grant any further extensions in this case.

## **CONCLUSION**

Consistent with the foregoing, Plaintiffs' "Combined Motion for an Extension of Time, For Leave to Serve an Additional Request for Production, and to Compel" (Doc. 96.) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**SO ORDERED**, this 21st  day of September 2021.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2] *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993).